JENNEY *v.* TOWNSHIP OF MUSSEY.

1. TOWNSHIPS—TREASURER—LEVY FOR TAXES—DEFENSE OF AC-
TION.

A township treasurer's possession of property seized for taxes is
not the possession of the township, and does not, therefore,
impose upon the township the legal duty of defending an ac-
tion against him growing out of such levy.

2. SAME—ASSUMPTION OF OBLIGATION.

A township, however, may, though no legal obligation exists, de-
fend and indemnify a township officer in a *bona fide* attempt to
discharge a duty, when the duty is imposed by law, and the
matter is one in which the township is interested.

3. SAME—DRAIN TAXES—INTEREST OF TOWNSHIP.

An action growing out of the attempted enforcement by a
township treasurer of drain taxes levied under the general tax
law of 1889 (Act No. 195) is not an action of which, under
the above rule, the township may assume defense; the town-
ship, as such, having no interest in the proceedings.

4. SAME—INSIGNIFICANT ITEMS.

The mere fact that a levy for taxes by a township treasurer in-
cluded an insignificant item in which the township is in-
terested will not authorize the township to employ an
attorney to defend suits against the treasurer growing out of
such levy, where the levy was almost entirely for drain taxes,
the validity of which is the real matter in controversy.

5. SAME—AUTHORITY OF TOWNSHIP BOARD.

In any event, the township board would have no authority to
assume the obligation on behalf of the township; 3 How. Stat.
§ 671, providing that no board or officer shall create any
debt or liability against a township, unless the same shall
have been authorized by a vote of the electors.

Error to St. Clair; Eldredge, J., presiding. Submitted
April 19, 1899. Decided September 19, 1899.

*Assumpsit* by Henry P. Jenney against the township
of Mussey for services as attorney. From a judgment for
plaintiff, defendant brings error. Reversed.

*Avery Bros. & Walsh,* for appellant.

*Henry P. Jenney* and *Atkinson, Wolcott & Moore,* for appellee.

HOOKER, J.   Drain taxes were assessed by the county drain commissioner.   The treasurer was sued in replevin and otherwise by various persons from whom he attempted to collect these taxes.   Acting under a resolution of the township board, the supervisor employed plaintiff to defend these suits, and he has brought suit against the township for his services.   The learned circuit judge held that the township was interested in these taxes, and that the supervisor had authority to employ counsel, under 1 How. Stat. § 737, upon the theory that these were actions against the treasurer in his official capacity, and therefore against the township, and that, if defeated, the township would be liable for the costs.

We think that township treasurers are not so far agents of their townships as to make the latter liable ordinarily for their misfeasances, and that the treasurer's possession of property taken for taxes is not the possession of the township.   We have never known of the replevin of such property from the township.   Such actions should be, and so far as we have known are, brought against the alleged wrong-doer, and, if his official title should be added to his name in the writ, it would be treated merely as *descriptio personæ.*   Taxes are imposed by law, as are the duties of township officers, who have no right to disregard their duties at township dictation.   It is a treasurer's duty to collect the taxes upon his roll.   He does this, not as a representative of the township alone, but of the State, which controls his action.   For convenience, the assessment and collection of taxes is confided to officers elected by cities and townships; but it does not follow that their acts are the acts of the cities and townships which elect them, and that such cities and townships are responsible for misconduct.   In discussing the subject of eminent domain, Mr. Justice COOLEY states the principle as follows:

" And as the State is not responsible for the acts or neglects of public officers in respect to the duties imposed upon them for the public benefit, so one of these corporations is not liable to private suits for either the nonperformance or the negligent performance of the public duties which it is required to assume, and does assume, for the general public, and from which the corporation itself receives neither profit nor special privilege." Cooley, Const. Lim. (6th Ed.) 256, 257, and note; Cooley, Tax'n (2d Ed.), 816, 817.

We are of the opinion, therefore, that this township was under no legal obligation to defend these actions. But the officers employed counsel, and undertook such defense, upon behalf of the township, and, unless their action was without authority, the plaintiff should recover the value of his services.

It is settled by numerous cases that a township may defend and indemnify its officers in *bona fide* attempts to discharge their duty, *when such duty is one imposed by law, and when the matter is one in which the township has an interest.* See Cooley, Const. Lim. (6th Ed.) 258, 259, and cases cited; *Gregory* v. *City of Bridgeport*, 41 Conn. 76 (19 Am. Rep. 485); *Bristol* v. *Johnson*, 34 Mich. 123; 1 Dill. Mun. Corp. (4th Ed.) § 147. When the township has no interest, the contract is *ultra vires*, and no implied contract arises to compensate the contractor for work actually done. Cooley, Const. Lim. (6th Ed.) 261, note. The case of *Dawson* v. *Township of Aurelius*, 49 Mich. 479, recognizes this doctrine, and applies it in a case somewhat analogous to the present case. It was there held that the township was not liable for a drain tax paid under protest, and the reason given was that it had no right to, or interest in, the money collected, which was said to be in the hands of the treasurer for other than township purposes. This case has been followed by others. In *Camp* v. *Township of Algansee*, 50 Mich. 4, it was said that " a township treasurer does not receive such money for the township, or as money to be used in a township matter." *Wallace* v. *Sortor*, 52 Mich. 161. In *Ander-*

*son* v. *Hill*, 54 Mich. 477, 485, this doctrine is applied to moneys collected by a township treasurer, to be expended by a state board. A similar case is *County of Alcona* v. *White*, 54 Mich. 505. See, also, *Barker* v. *Township of Vernon*, 63 Mich. 516; *Taylor* v. *Township of Avon*, 73 Mich. 604.

These cases must be conclusive of the case, so far as the suits which involved only drain taxes are concerned, unless the statute under which this drain was laid has changed the pre-existing rule, and given the township an interest in the matter, and this is strenuously urged. The general tax law of 1889 (Act No. 195, Pub. Acts 1889) is said to have been in force when these taxes were levied. Section 23 requires the township clerk to make and deliver to the supervisor of his township a certified copy of all statements and certificates on file, and of all records of any vote or resolution, in his office, authorizing or directing moneys to be raised therein, by taxation, for township, school, highway, drain, and all other purposes. The supervisor is required to file these with the county clerk. Section 24 requires the board of supervisors to examine these, and to hear objections made by any taxpayer. They shall direct that such of the several amounts of money proposed to be raised for township, school, highway, drain, and all other purposes as shall be authorized by law be spread upon the assessment roll. Section 26 provides that "all school taxes and the one-mill tax [shall be entered] in one column, highway taxes in another, township taxes in another, county taxes in another, and the State taxes in another column, and, if other taxes are at any time required to be raised, they shall be placed in separate columns. * * * The taxes thus assessed shall become at once a debt to the township from the person to whom they are assessed," etc.; and it is said that the supervisor, as agent of the town, may sue for the same. *Township of Bangor* v. *Smith Transp. Co.*, 112 Mich. 601. Section 41 permits any person to pay any tax, whether levied on personal or real property, under protest, to the township

treasurer, and to sue the township therefor. It is said that no allusion was made to drain taxes in the law of 1885, and that the law of 1889 was passed a few weeks after the decision of the case of *Taylor* v. *Township of Avon,* for the purpose of placing drain taxes on a footing with other taxes. It is also urged that the township has an interest by reason of the assessment by the drain commissioner of a portion of these taxes upon the township at large; but, as this was permissible under all of the acts under consideration, we think the question is settled by former decisions. In fact, all of the points urged seem concluded by the case of *Hillyer* v. *Township of Jonesfield,* 114 Mich. 644. The more recent tax laws seem to have imposed additional duties upon various officers, and perhaps upon counties and townships; but the interest of the township in the fund is held to be no greater than heretofore.

In some of the cases, dog taxes were included in the taxes for which the levies were made, and it is said that these, being township taxes, gave the township an interest in the result of such suits. If this is so, and we think it is, the township might defend the action of the treasurer in making a levy, and might make a valid contract with counsel to conduct the defense; but these dog taxes were but one dollar in each case, and in the aggregate but two dollars, and there is force in the contention that they were not considered by any of the parties when plaintiff was employed. We think the finding indicates that the employment was in relation to the drain taxes, and that these dog taxes were merely incidental. We see nothing to indicate that the board or supervisor upon the one side, or plaintiff upon the other, understood that it was the purpose to enter upon expensive litigation for a paltry two dollars.

But, be that as it may, there is another reason for holding that this contract was invalid. We have said that it is well settled that townships may defend their officers in some cases, although there is no legal obligation to do so. But we think it is not within the power of these officers to

obligate the town to do so, by employing counsel upon behalf of the town, nor can the township board do so. The law permits townships to sue and be sued (1 How. Stat. § 670), and the supervisor may prosecute, in the name of the people or otherwise, for penalties and forfeitures incurred within his township (Id. § 732). He is also the agent for the transaction of all legal business, and he is to bring and defend suits for and against the town, and process is to be served upon him. Id. § 737. But these sections do not confer upon any officer or board the power to determine when it will protect or indemnify an officer against personal litigation or loss when there is no legal obligation upon the township to do so. These are matters which must go before the electors of the township. Such has been the course taken in many of the adjudicated cases where townships have been held liable for assuming such obligations. *Babbitt* v. *Selectmen of Savoy*, 3 Cush. 530; *Fuller* v. *Inhabitants of Groton*, 11 Gray, 340; *Nelson* v. *Inhabitants of Milford*, 7 Pick. 18; *Baker* v. *Inhabitants of Windham*, 13 Me. 74; *Hadsell* v. *Inhabitants of Hancock*, 3 Gray, 526. If there were otherwise any doubt about it, the provisions of 3 How. Stat. § 671, should set the question at rest. In the case before us the treasurer, in his personal capacity, was defendant in some suits in which no liability was claimed against the town. The township board and supervisor, without any vote of the electors, and without any authorization by provisions of law, undertook to create a liability by employing the plaintiff upon behalf of the township.

We cannot concur in the view taken by the learned circuit judge, and the judgment must be reversed, and a new trial ordered.

The other Justices concurred.